UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER MURTOFF, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) No. 1:21-CV-02607 <br> ) <br> v. ) <br> ) Judge Edmond E. Chang <br> ) <br> MY EYE DOCTOR, LLC, and ) <br> CAPITAL VISION SERVICES, LLC, ) <br> ) <br> Defendants. ) | |

MEMORANDUM OPINION AND ORDER

Beginning a few years ago, and continuing until at least March 2021, Jennifer Murtoff received multiple automated calls from MyEyeDr. and Capital Vision Services (for convenience's sake, this Opinion will refer to MyEyeDr. as the collective stand-in for the two Defendants). R. 1, Compl. ¶¶ 17, 22.[1] The calls continued despite Murtoff requesting, in August 2020, that MyEyeDr. stop calling her. *Id.* ¶ 20. Murtoff now brings this proposed class action, alleging that MyEyeDr. violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, by calling her without prior express written consent, and by continuing to call after she had requested that the calls stop.[2] *Id.* ¶¶ 45, 46. She is seeking $500 in statutory damages for each violation (Count 1) and $1,500 in statutory damages for each willful violation (Count 2).

---

[1]Citations to the record are noted as "R." followed by the docket number.
[2]Federal district courts have federal-question jurisdiction of suits brought under the TCPA's private right of action. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

1

MyEyeDr. moves to dismiss the part of the claim that relies on the lack of prior express written consent, arguing that the calls were "health care" messages that did not require that type of consent. R. 17, Defs.' Br. at 1. For the reasons discussed in this Opinion, the partial motion to dismiss is denied.

## I. Background

For purposes of this motion, the Court accepts as true the factual allegations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Sometime in the last few years, Jennifer Murtoff began receiving automated calls from MyEyeDr. Optometrists, LLC. Compl. ¶ 17. Co-Defendant Capital Vision Services, LLC, is the corporate entity that actually owns and operates MyEyeDr. *Id.* ¶ 3. The calls notified Murtoff that it was "time for your next eye exam" and encouraged Murtoff to contact MyEyeDr. to schedule that exam. *Id.* ¶ 18. In August 2020, Murtoff called MyEyeDr. at least twice and told them to stop calling her. *Id.* ¶ 20.

Despite the do-not-call request, the calls continued on for at least another seven months. Compl. ¶ 22. Before all this started to happen, sometime in 2018 Murtoff had reached out to MyEyeDr. via email, asking about the cost for a new pair of eyeglasses. R. 22, Pl.'s Br. at 3.[3] MyEyeDr. moves to dismiss on the grounds that these eye-exam voicemails were "health care" messages and thus exempt from the TCPA's requirement of express written consent. Defs.' Br. at 1.

---

[3]Although not alleged in the Complaint, Murtoff's response brief describes this email. The Court accepts this allegation to the extent that it is consistent with the Complaint. *See Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017).

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### III. Analysis

### A. Health Care Exemptions

Under its rulemaking authority, the Federal Communications Commission has issued two health care exemptions from the TCPA. The first exemption (referred to as the 2012 exemption or the Health Care Rule) covers any call that "Delivers a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,' as those terms are defined in the HIPAA Privacy Rule." 47 C.F.R. § 64.1200(a)(3)(v). This exemption was modeled after the FTC's health care exception to its Telemarketing Sales Rule. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1853–54 ¶¶ 59–60 (2012) ("2012 FCC Order"). The FCC Health Care Rule "exempt[s] [such calls] from the *written* consent requirement"—not from consent entirely. *Zani v. Rite Aid Hdqtrs. Corp.*, 246 F. Supp. 3d 835, 845–46 (S.D.N.Y. 2017) (emphasis added), *aff'd*, 725 F. App'x 41 (2d Cir. 2018).

The second exemption was issued in 2015 (call it the "2015 exemption" or "Healthcare Treatment Rule"). This exemption covers certain calls or texts to cell phones, and exempts them from prior consent entirely. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8030–31 ¶ 145–46 (2015) ("2015 FCC Order"). This exemption is subject to seven conditions and only applies when the calls or texts are not charged to the recipient. *Id.* at 8031–32 ¶ 147–48. *See also ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 712–13 (D.C. Cir. 2018) (discussing the differences between the two provisions); *Zani*, 246 F.

4

Supp. 3d at 846; *Jackson v. Safeway, Inc.*, No. 15-CV-04419-JSC, 2016 WL 5907917, at *3–*4 (N.D. Cal. Oct. 11, 2016).

Each exemption has different requirements, and each alters the TCPA's consent provisions in a different way. MyEyeDr. does not specify which of these two exemptions it is invoking. It quotes from the 2012 order *and* the 2015 order. *See* Defs.' Br. at 4. It hedges on whether these messages required prior nonwritten consent (suggesting reliance on the 2012 exemption) or no prior consent at all (the 2015 exemption). *See, e.g., id.* at 1 (describing the messages as requiring "only prior express consent (if any)"). Ultimately, however, the most reasonable reading is that MyEyeDr. is relying on the 2012 exemption. MyEyeDr. repeatedly refers to 47 C.F.R. § 64.1200, which codifies the 2012 exemption. *See* Defs.' Br. at 3. Also, MyEyeDr. does not address any of the seven additional requirements in the 2015 exemption, nor does it discuss whether the calls were charged to Murtoff. These omissions are fatal to any invocation of the 2015 exemption. So the 2012 exemption is the one in contention.

### B. 2012 Health Care Rule

The 2012 Health Care Rule exempts calls by or on behalf of "covered entit[ies]" that deliver messages regarding "health care," as those terms are defined by the HIPAA Privacy Rule. 47 C.F.R. § 64.1200(a)(3)(v). In turn, the HIPAA Privacy Rule includes health care providers, among others, in its definition of covered entities. 45 C.F.R. § 160.103. The Privacy Rule defines health care as "care, services, or supplies related to the health of an individual ... [including] [p]reventive, diagnostic, therapeutic, rehabilitative, maintenance, or palliative care, and counseling, service,

5

assessment, or procedure with respect to the physical or mental condition, or functional status, of an individual ...." *Id.*

In interpreting the regulatory text, one district court opinion in particular has thoroughly canvassed the relevant text and administrative guidance to arrive at three considerations in determining whether the Health Care Rule applies. *Zani v. Rite Aid Hdqtrs. Corp.*, 246 F. Supp. 3d 835, 850–51 (S.D.N.Y. 2017), *aff'd*, 725 F. App'x 41 (2d Cir. 2018). The first factor is whether the call "concerns a product or service that is inarguably health-related." *Id.* at 851. The second factor asks whether the call "was made by or on behalf of a health care provider to a patient with whom she has an *established health care treatment* relationship." *Id.* (emphasis added). The third factor is whether the call "concerns the *individual health care needs* of the patient recipient." *Id.* (emphasis added).

The Court adopts this analytical framework because *Zani* persuasively and meticulously reviewed relevant caselaw and agency guidance. 246 F. Supp. 3d at 850–51. Also, the *Zani* factors have been relied on by other courts. In *Sullivan v. All Web Leads, Inc.*, the district court applied the *Zani* factors and concluded that calls advertising individual health-insurance plans were not exempt under the Health Care Rule. Case No. 17 C 1307, 2017 WL 2378079, at *5 (N.D. Ill. June 1, 2017). The court held that the calls failed all three factors because the calls were "hopelessly divorced" from HIPAA's definition of health care, not made "by or on behalf" of a provider in an established treatment relationship, and did not concern the recipient's individual health care needs. *Id.* at *5–*6; *see also, e.g.*, *Bailey v. CVS Pharmacy, Inc.*, Case No.

6

17CV11482, 2018 WL 3866701, at *6 (D.N.J. Aug. 14, 2018) (applying the *Zani* factors to text messages offering flu shots). A final reason to apply *Zani* here is that both sides premise their arguments on the *Zani* factors in their briefing. *See* Pl.'s Br. at 6; R. 26, Defs.' Reply at 4. So the Court applies the *Zani* factors to the calls at issue in this case.

### 1. Inarguably Health-Related

The first factor is whether the call "concerns a product or service that is inarguably health-related." *Zani*, 246 F. Supp. 3d at 851. MyEyeDr. stresses that eye exams would fall under HIPAA's definition—and, therefore, the Health Care Rule's definition—of "health care." Defs.' Br. at 5—6. Murtoff does not address whether eye exams are health-related; instead, her response focuses on the other two considerations in *Zani*. *See* Pl.'s Br. at 2. That is a sensible (if silent) concession because an eye exam is a common form of health care. When it created the 2012 exemption, the FCC adopted HIPAA's definition of health care, 47 C.F.R. § 64.1200(a)(3)(v) (incorporating HIPAA Privacy Rule), which in turn defines health care to include (not surprisingly) "[p]reventative" and "diagnostic" care, 45 C.F.R. § 160.103. What's more, because the FCC modeled the 2012 exemption on the Federal Trade Commission's health care exception for telemarketing calls, FTC guidance is also relevant to the interpretive task. 2012 FCC Order, 1853–54 ¶ 59–60. The FTC's parallel guidance lists three types of calls that would qualify as "health care" under the HIPAA Privacy Rule: "(1) calls to describe a health-related product or service that is provided by, or included in a plan of benefits of, the covered entity making the communication; (2) calls for

7

treatment of the individual; and (3) calls for case management or care coordination for the individual, or to direct or recommend alternative treatments, therapies, health care providers, or settings of care to the individual." *Zani*, 246 F. Supp. 3d at 850 (cleaned up).

The calls at issue here fall within those definitions. Eye exams provide preventative and diagnostic care. And, as Murtoff herself alleges, MyEyeDr. is a provider of those services. Compl. ¶¶ 2–3. So the alleged eye-exam calls qualify as services that are "inarguably health-related" and "provided by ... the covered entity making the communication." *Zani*, 246 F. Supp. 3d at 850–51. The first factor tips in MyEyeDr.'s favor.

### 2. Established Health-Care Treatment Relationship

The consideration most intensely disputed by the parties is whether Murtoff and MyEyeDr. had an established relationship health-care treatment relationship. At the heart of the dispute is exactly what sort of relationship existed between Murtoff and MyEyeDr. Although not mentioned in the Complaint, Murtoff does concede that, in 2018, she emailed MyEyeDr. for a quote on a pair of eyeglasses. Pl.'s Br. at 3. MyEyeDr. asserts that the interaction went further than that, Defs.' Reply at 1 n.1, but because this is a motion to dismiss, outside-Complaint facts (other than what Murtoff concedes) cannot be considered and, indeed, the facts must be read in the light most favorable to Murtoff. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016).

At the pleading stage, Murtoff has the better of the argument. In issuing the 2012 exemption, the FCC distinguished between the limited set of health care providers versus the expansive universe of telemarketers, explaining that "the number of health care providers who might call a *patient* is inherently quite limited—as is the scope of the resulting potential privacy infringement—in sharp contrast to the virtually limitless number of businesses potentially conducting commercial telemarketing campaigns." 2012 FCC Order, 1853 ¶ 59 (emphasis added). Similarly, in the FTC's health care exception to the Telemarketing Sales Rule, the FTC noted that the "the calls would come from a limited number of providers, and would be limited in their frequency by the medical needs of the *patient*." Telemarketing Sales Rule, 73 Fed. Reg. 51164-01 (emphasis added). So both the FCC's and the FTC's guidance emphasized that health care providers would be a limited set of potential callers because the number of *patient*-provider relationships would be limited.

A review of relevant caselaw confirms this point.[5] In *Zani*, the court granted summary judgment to the defendant-pharmacy, reasoning that the plaintiff there had received a flu shot from the same provider, thus forming a patient-provider relationship. 246 F. Supp. 3d at 840. In *Jackson*, the court likewise granted the defense's

---

[5]Of the cases cited by the parties, *Dorfman*, *Coleman* and *Sullivan* are not helpful on this specific point. In both *Dorfman* and *Coleman*, there was no provider-patient relationship to scrutinize because the plaintiffs were receiving calls not meant for them but for other individuals. *See Dorfman v. Albertsons*, LLC, No. 1:18-CV-00094, 2019 WL 5873448, at *1 (D. Idaho Feb. 12, 2019); *Coleman v. Rite Aid of Georgia, Inc.*, 284 F. Supp. 3d 1343, 1344—45. (N.D. Ga. 2018). And as already discussed, in *Sullivan* the court held that the calls were "hopelessly divorced" from HIPAA's definition of health care and not made "by or on behalf of a health care provider." 2017 WL 2378079, at *6.

9

motion for summary judgment, in part because the call recipient there had received a flu shot from the same provider. 2016 WL 5907917, at *1. In *Forney*, the plaintiff had previously purchased health care services from the defendant (albeit services that she later canceled). *Forney v. Grand Island Chiropractic, P.C.*, No. 18-CV-616, 2019 WL 8063922, at *1 (W.D.N.Y. Nov. 8, 2019), *report and recommendation adopted*, No. 18-CV-616, 2020 WL 924205 (W.D.N.Y. Feb. 25, 2020). The court denied without prejudice the defense's summary judgment motion, explaining that the motion was premature because no discovery had yet been conducted. *Id.* at *4. In *Bailey*, the court granted the defendant's motion to dismiss, observing that the plaintiff was a current customer of the defendant (a pharmacy), with prescriptions awaiting pickup at the time that the texts in question were sent. 2018 WL 3866701, at *2.

All of those cases describe a relationship that went beyond what is alleged to have existed here between Murtoff and MyEyeDr. MyEyeDr. does not cite any cases in which a single email *inquiry*—one that never consummated in any rendering of health care—was enough to invoke the Health Care Rule. It would be odd indeed, in plain-language terms, for MyEyeDr. to call itself Murtoff's "health care provider" when all it did was receive a query from Murtoff on the costs of a pair of eyeglasses.

It is worth noting too that most of the relevant cases (three of the four, to be precise) addressed the health care relationship issue at the summary judgment stage, rather than at the pleading stage. *See Forney*, 2019 WL 8063922, at *1; *Zani*, 246 F. Supp. 3d at 839; *Jackson*, 2016 WL 5907917, at *1. Given that dismissal motions are evaluated only on the facts that are alleged in complaints, it is not surprising that

10

the consideration of the relationship between the plaintiff and the defendant might very well benefit from a discovery record so that the specifics of the relationship can be fleshed out.

### 3. Individual Health Care Needs of the Patient

The last factor asks whether the calls concerned the patient's *individual* health care needs. The pertinent point is that the absence of an individualized message weighs in favor of concluding that the calls are not health care messages for a patient but rather really are telemarketing ads aimed at a broader swath of consumers. *See Bailey,* 2018 WL 3866701, at *6; *Zani,* 246 F. Supp. 3d at 853 (plaintiff argued "the generic nature of the [disputed] calls establish[ed] that [they] did not convey health care messages."). Murtoff argues that because the calls generically "encouraged the purchase of Defendant's services," they constituted telemarketing. Pl.'s Br. at 5. Murtoff also relies again on the lack of an existing relationship—not even a consummated consumer transaction—arguing that MyEyeDr.'s targeting of noncustomers further weighs in favor of deeming the calls as telemarketing. *Id.* MyEyeDr. counters that it is "immaterial" whether the call induced Murtoff to "'purchase' [MyEyeDr.'s] services," so long as the call conveyed a health care message. Defs.' Reply at 3.

It is true, as MyEyeDr. argues, that calls protected by the Health Care Rule need not, broadly speaking, completely avoid advertisement—even generic advertisement—for the provider's services. The FTC observed that a health care exception was necessary because health care calls are "arguably part of 'a plan, program, or campaign conducted to induce the purchase of goods or services'" and thus, without the

11

exception, health care calls would violate anti-telemarketing laws. Telemarketing Sales Rule, 73 Fed. Reg. 51164-01. Other courts that have considered this issue have likewise recognized that the very existence of the Health Care Rule suggests that health care calls will often include *some* marketing content. *Sullivan*, 2017 WL 2378079, at *6 ("[C]alls otherwise qualifying as 'health care messages' need not eschew all advertising content."); *Jackson* 2016 WL 5907917, at *9 ("[I]t would have been odd for the FCC to create an *exception* ... only for calls that contain no advertising or telemarketing, given that the *general rule* itself only applies to a call that ... constitutes telemarketing.") (emphasis in original). *Zani* also acknowledged that even calls with "the characteristics of telemarketing or advertising" might still be protected under the Health Care Rule. 246 F. Supp. 3d at 856. Having said that, in affirming *Zani*, the Second Circuit cautioned that "even a call otherwise fitting the requirements of the Health Care Rule might become so laden with marketing material as to raise a factual issue as to whether they fall outside the health care exemption." *Zani v. Rite Aid Hdqtrs. Corp.*, 725 F. App'x 41, 44 (2d Cir. 2018) (unpublished opinion) (cleaned up).

Here, with the limited set of alleged facts in play—and reading those facts in Murtoff's favor—this factor weighs in favor of deeming the calls as outside the protection of the Health Care Rule. As far as the Complaint goes (and even adding the single email inquiry for a quote on eyeglasses), there was nothing individualized about the solicitation, "according to our records, it's time for your next eye exam." Compl. ¶ 18. What records? How did MyEyeDr. know that it was time for Murtoff's

12

next eye exam? On what *individualized* basis did MyEyeDr. target Murtoff with that message? None is apparent on the fact of the Complaint.

All in all, reading the Complaint in the light most favorable to Murtoff, she has adequately stated a claim for the calls made without express prior written consent.

## IV. Conclusion

MyEyeDr.'s motion to dismiss is denied. The parties shall confer on the resumption of discovery and propose a schedule in a joint status report by April 8, 2022. The tracking status hearing of April 15, 2022, remains in place.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 26, 2022